UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DOMINIC WILLIAMS,

                       Plaintiff,

v.                                                                 Case No. 24-cv-505-pp

JANE DOE #1, *et al.*,

                       Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

      Plaintiff Dominic Williams, who is incarcerated at Fox Lake Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants failed to treat his ongoing medical condition. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.**      **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

      On May 21, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $31.85. Dkt. No. 7. The court received that fee on June 11, 2024.

The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The caption of the complaint names Jane Doe defendants and alleges that they work at the Milwaukee County Jail, Dodge Correctional Institution and Fox Lake. Dkt. No. 1 at 1. The complaint itself alleges the following:

> The notified medical providers @ Milwaukee County Jail Facility (MCJF) and Dodge Correctional [illegible] as Fox Lake Correctional Institute all over the period 4/20—4/24 misdiagnosed the skin lessions on my lower extremities and facial and head irritated scaly chaffing. Defendants violated my 8th Amendment rights when they failed to correctly diagnose me and provide reasonable and prompt medical care. During the period from 4/20/20 while at MCJF several unknown name medical providers provided treatment and several misdiagnosis resulting in ineffective and improper medical treatment. The MCJF also failed promptly provide me with dermitology care appropriate to my condition. Instead I was diagnosed with (PVD) Peripheal Vascular Disease which resulted in loss of circulation to my legs and feet. Months after the medicine regiment failed I my condition continued to worsen the then diagnosed me with a fungal disease affecting my legs and face and head which caused me to chaff and scale up causing painful skin irritation and discomfort for months. Once transferred to Dodge Correctional under the care of Dr. Sukowaty the primary physician disregarded and additional and necessary treatment for my skin irritation. Although she promised a dermitologist after completing a benign skin biopsy & culture of one of the lessions on my legs she never followed through, thus leaving me in continuous pain and with excessively growing lessions to both legs which she took pics and

> measured while in a smaller manageable form. 12/7/2021 [illegible] measured it at 2-4 cm. 3/21/23 Dr. N. Shabeeb the dermitologist 11/18/21 Dr. Sukowaty 10x10cm. 7/28/22 Dr. Palop @ FLCI and unknown date Dr. Godiwalla measured.

Id. at 2-3.

In a detailed description of the facts attached to his complaint, the plaintiff alleges that while at the jail, he "continuously complained of skin issues to lower extremities and face dating back to May of 2020." Dkt. No. 1-1 at 1. He says he had an outbreak of "itchy, scaly, discolorated [*sic*] rashes all over [his] body specifically to [his] face and lower extremities." Id. The plaintiff saus that these "issues are chronic, re-occurring and at this point irreversible scarring has occurred created by lack of appropriate and proper care and treatment provided from day (1) one of the initial occur[r]ence." Id.

The plaintiff alleges that he told "the medical staff" about his skin issues several times, and they referred him to a provider for evaluation and diagnosis. Id. This unnamed provider diagnosed him with Peripheral Vascular Disease (PVD), which he says caused poor circulation in his legs. Id. He alleges that he was not given a "rational diagnosis . . . for [his] facial situation," which he says "was also scaly and very tender from unknown chaffing." Id. The plaintiff asserts that he was prescribed ointment and stockings, which did not help. Id. He alleges that he filed complaints to medical staff about his issues and received only a $7.00 "med call fee" and more ointment, even though medical staff knew that his "issue was chronic and on-going." Id. at 1–2.

The plaintiff's condition worsened, so he requested a dermatologist appointment from his providers at the jail. Id. After several months, his providers changed his diagnosis to "some sort of skin fungus and prescribe[d] fungal shampoo." Id. at 2. He says the unnamed nurse and provider who saw him "treated [him] as if [he were] contagious and they would contract

something if touched and evaluated closer." Id. He also alleges that medical staff ignored his request to see a dermatologist to diagnose and treat his skin condition, "which resulted in unnecessary and prolonged pain, discomfort and irritation and continuous spreading." Id.

On page 3 of his detailed facts section, the plaintiff clarifies his allegations and says he received continuous, inadequate care for his skin condition from April 2020 through April 2024 from medical staff at the jail, Dodge, Fox Lake and the Milwaukee Community Reintegration Center (formerly the House of Correction). Id. at 3. He alleges that medical officials at all these institutions failed to send him to a dermatologist for proper diagnosis and treatment and ignored his requests for better care. Id. He alleges that he "endure[d] 4 years of pain, agony and discomfort as well as a[c]quire[d] life long lasting and irreversable [*sic*] scarring to [his] body." Id. The plaintiff says he did not see a dermatologist until the third year, and she correctly diagnosed him with "Psori[a]sis with lichenification and post inflammatory, mild-acne vulgaris." Id. at 3–4.

The plaintiff asserts that even after he received this proper diagnosis, he continued to receive inadequate care at Fox Lake. Id. He alleges that Fox Lake medical staff did not properly follow the dermatologist's recommendations, disregarded his complaints about his condition and did not send him back for a follow-up appointment with the dermatologist. Id. at 4–5. He says that Fox Lake staff neglected and ignored him, failed "to treat [him] with the proper med regiment and den[ied him] access to the derm[a]tologist prescribed medicines." Id. at 5. The plaintiff alleges that he has faced difficulties obtaining the proper medication since his offsite dermatologist visit on March 21, 2023. Id. at 6. He asserts that Fox Lake staff discontinued his recommended medications, told

him "they no longer can provide for [his] care" and instructed him to purchase the soaps and ointments he needed from the commissary. Id. The plaintiff says that as of the writing of his complaint, he has not been seen about his skin condition in twelve months "other than the Freese [*sic*] procedure." Id.

The plaintiff asserts that the inadequate treatment of his skin condition violated his rights under the Eighth Amendment. Id. at 7. He alleges that "Health Services staff" knew his skin conditioning was worsening because he submitted "numerous HSR (Health Service Request)" for three years. Id. He says he saw "various providers" at the jail and House of Correction, and he alleges that Dr. Sukowaty at Dodge and Dr. Palop or Godiwalla at Fox Lake failed to provide appropriate care. Id. He says the Fox Lake doctors are the ones who failed to follow the recommendations of the dermatologist and send him back for a follow-up appointment. Id.

The plaintiff seeks compensatory and punitive damages. Id. at 8. He also seeks a declaration that the defendants violated his rights. Id.

C. Analysis

The plaintiff alleges ongoing inadequate care for his serious skin condition since April 2020 while he was incarcerated at four different correctional facilities—the Milwaukee County Jail, the Milwaukee House of Correction, Dodge Correctional Institution and Fox Lake Correctional Institution. The Wisconsin Circuit Court Access page shows that the plaintiff was arrested in April 2020, and in November 2020 he pleaded no contest to one count of "Mayhem." See State v. Williams, Case Number 2020CF1367 (Milwaukee County Circuit Court) (available at https://wcca.wicourts.gov/case.html). He remained in custody at either the jail or House of Correction until November 2021, when he was sentenced on that charge. Id. On November

22, 2021, he was transferred to Dodge; on February 16, 2022, he was transferred to Fox Lake, where he remains. See Department of Corrections Offender Search, https://appsdoc.wi.gov/lop/home/home (DOC #281020). Because he filed this complaint on April 26, 2024, he effectively alleges that he has had inadequate care for four years.

The court analyzes the plaintiff's claims against medical staff at the jail and House of Correction under the Fourteenth Amendment because at the time he was confined at those institutions, he was a pretrial detainee and was not yet a convicted *and* sentenced person. See Miranda v. County of Lake, 900 F.3d 335, 352 (7th Cir. 2018); Lewis v. Downey, 581 F.3d 467, 473–74 (7th Cir. 2009). To proceed on a Fourteenth Amendment claim for inadequate medical treatment, the plaintiff must show that 1) "the 'defendants acted purposefully, knowingly, or perhaps even recklessly'" and 2) "the defendants' actions were [not] 'objectively reasonable.'" Pittman by & through Hamilton v. County of Madison, Ill., 970 F.3d 823, 827 (7th Cir. 2020) (quoting Miranda, 900 F.3d at 353–54). Neither negligence, gross negligence nor medical malpractice amount to deliberate indifference. See Miranda, 900 F.3d at 353. The plaintiff's allegations must show "'more than negligence but less than subjective intent—something akin to reckless disregard'" to proceed on a Fourteenth Amendment claim. Id. at 353–54 (quoting Gordon v. County of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018)).

Once the plaintiff was convicted and sentenced, his claim became grounded in the Eighth Amendment, which "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain,' including . . . grossly inadequate medical care." Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting Pyles v. Fahim, 771 F.3d 403,

408 (7th Cir. 2014)) (internal quotations omitted). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The plaintiff's allegations satisfy both these standards. Psoriasis is defined as a chronic condition that can cause "[p]atches of skin [to] become scaly and inflamed, most often on the scalp, elbows, or knees." National Institute of Arthritis and Musculoskeletal and Skin Diseases, Psoriasis, https://www.niams.nih.gov/health-topics/psoriasis (last visited July 3, 2024). These symptoms can come and go and may be mild or moderate. Id. Lichenification is "a secondary skin lesion wherein the characteristic features of skin thickening, hyperpigmentation, and exaggerated skin lines are noted." National Library of Medicine, Lichenification, available at https://www.ncbi.nlm.nih.gov/books/NBK537332/ (last updated May 1, 2023). Courts in this circuit have opined that psoriasis can be, but is not always, a serious medical condition that can support a §1983 claim. Compare Overturf v. Wexford Health Sources, Case No. 17-CV-00762, 2020 WL 6826805, at *7 (S.D. Ill. Nov. 20, 2020) (expressing skepticism whether the plaintiff's psoriasis "constitutes an

objectively serious medical condition" absent evidence that it "ever became infected"); with Kuykendall v. Kennell, Case No. 14-1477, 2015 WL 1887507, at *4 (C.D. Ill. Apr. 24, 2015) (finding incarcerated person's allegations that "he suffers from psoriasis and receives prescription medication to treat the condition" sufficient to constitute "a serious medical need for purposes of an Eighth Amendment medical claim"). The plaintiff alleges that his skin condition caused "pain, agony and discomfort" and permanent scarring on his body for over four years. He says he continues to suffer from these symptoms at Fox Lake without proper treatment. The court errs on the side of caution and finds for purposes of this order that the plaintiff's psoriasis constitutes an objectively serious medical condition.

The court also finds that the complaint sufficiently alleges that the defendants provided unreasonable care (under the Fourteenth Amendment analysis) or were aware of but indifferent to the plaintiff's condition (under the Eighth Amendment). The plaintiff alleges that for three years, medical officials at the jail, the House of Correction, Dodge and Fox Lake misdiagnosed him, provided inadequate and inefficient care and denied his requests to see a dermatologist who could properly diagnose his condition. He alleges that even after he saw a dermatologist who correctly diagnosed his condition, Fox Lake officials disregarded the dermatologist's recommendations, refused to provide him with prescribed medication and told him to purchase soaps and ointments from the commissary instead. He says those officials also refused to send him back to the dermatologist for a recommended follow-up appointment. Medical officials may be found to be deliberately indifferent if they "doggedly persist[] in a course of treatment known to be ineffective," Greeno v. Daley, 414 F.3d 645, 655 (7th Cir. 2005), "act[] in a manner contrary to the recommendation of

9

Case 2:24-cv-00505-PP   Filed 07/08/24   Page 9 of 15   Document 8

specialists," Perez, 792 F.3d at 777, or needlessly delay treatment for non-medical reasons, Arnett v. Webster, 658 F.3d 742, 753 (7th Cir. 2011). The plaintiff alleges that medical officials at the jail, the House of Correction and state prisons did *all* those things. Evidence may later show that some medical officials provided reasonable, conservative care for the plaintiff's condition early on or before he was transferred to another correctional institution. But accepting the plaintiff's allegations as true for the purposes of screening, the court finds that the complaint states viable Fourteenth and/or Eighth Amendment claims against officials at the jail, House of Correction and Dodge and Fox Lake Correctional Institutions.

The next question is who is subject to liability for the allegedly inadequate medical care. The only persons the plaintiff names who he says failed to properly diagnose and treat his medical condition are Dr. Sukowaty at Dodge and Drs. Palop or Godiwalla at Fox Lake. The court will add these doctors as defendants and allow the plaintiff to proceed against them. See Donald v. Cook Cnty. Sheriff's Dep't, 95 F.3d 548, 555–56 (7th Cir. 1996) (holding that courts are charged with assisting self-represented litigants who state allegations against individuals not necessarily named in the caption of their complaint).

The plaintiff has not identified any person who mistreated him at the jail or the House of Correction. He says he does not know the names of those persons. The court will add Milwaukee County Sheriff Denita R. Ball as a placeholder for the jail defendants and will add Superintendent Chantell Jewell as a placeholder for the House of Correction/Community Reintegration Center defendants. Sheriff Ball and Superintendent Jewell are not required to respond to the complaint. After attorneys for Ball and Jewell file appearances, the

plaintiff may serve discovery upon Sheriff Ball and Superintendent Jewell (by mailing it to their attorney(s) at the address in their notice of appearance) to get information that will help him identify the names of the Doe defendants.

For example, the plaintiff may serve interrogatories (written questions) under Fed. R. Civ. P. 33 or document requests under Fed. R. Civ. P. 34. Because the plaintiff has not alleged that Sheriff Ball or Superintendent Jewell were personally involved in the denial of adequate medical treatment (and thus, he has not stated a claim against them), the plaintiff's discovery requests must be limited to information or documents that will help him learn the real names of the defendants he is suing. The plaintiff may not ask Sheriff Ball or Superintendent Jewell about any other topic, and Sheriff Ball and Superintendent Jewell are under no obligation to respond to requests about any other topic.

After the plaintiff learns the names of the medical officials whom he alleges violated his constitutional rights, he must file a motion to substitute their names for the Doe placeholders. The court will dismiss Sheriff Ball and Superintendent Jewell as defendants once the plaintiff identifies the Doe defendants' names. The plaintiff must identify the names of the jail and House of Correction defendants **within sixty days of the date on which Sheriff Ball and Superintendent Jewell's attorneys file their notices of appearance**. If the plaintiff does not identify the names of the Doe defendants within sixty days after the attorneys for Sheriff Ball and Superintendent Jewell have filed their notices of appearance (or does not explain to the court in writing why he is unable to do so), the court may dismiss his case based on his failure to diligently pursue it. Civil Local Rule 41(c) (E.D. Wis.).

Once the plaintiff has identified the jail and House of Correction defendants and all named defendants have responded to the plaintiff's complaint, the court will issue a scheduling order setting deadlines for the completion of discovery and for filing dispositive motions. The scheduling order also will set a deadline for the plaintiff to identify any additional Doe defendants at Dodge and Fox Lake Correctional Institutions and will give the plaintiff additional information for identifying those Doe defendants.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DIRECTS** the Clerk of Court to add Doctor Sukowaty at Dodge Correctional Institution and Doctors Palop and Godiwalla at Fox Lake Correctional Institution to the docket as defendants.

The court **DIRECTS** the Clerk of Court to add Milwaukee County Sheriff Denita R. Ball and Milwaukee Community Reintegration Center Superintendent Chantell Jewell to the docket as defendants for the limited purpose of helping the plaintiff identify the real names of Doe defendants

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on Doctor Sukowaty at Dodge Correctional Institution and Doctors Palop and Godiwalla at Fox Lake Correctional Institution. Under the informal service agreement, the court **ORDERS** those defendants to respond to the complaint within 60 days.

The court **ORDERS** that under an informal service agreement between Milwaukee County and the court, the court will electronically transmit a copy

of the complaint and this order to Milwaukee County for service on Sheriff Ball at the Milwaukee County Jail and on Superintendent Jewell at the Milwaukee County Community Reintegration Center.

The court **ORDERS** that Sheriff Ball and Superintendent Jewell are not required to respond to the complaint; however, they must respond to discovery requests that the plaintiff serves in an effort to identify the Doe defendants' names. Sheriff Ball and Superintendent Jewell are not required to respond to discovery requests about any other topic.

The court **ORDERS** that the plaintiff must identify the real names of the Milwaukee County Jail and House of Correction defendants **within sixty days of the date on which attorneys for Sheriff Ball and Superintendent Jewell file their notices of appearance**. If, within sixty days of the date on which the attorneys for Sheriff Ball and Supe3rintendent Jewell file their notices of appearance, the plaintiff does not either identify the real names of the Milwaukee County Jail and House of Correction defendants (or explain to the court in writing why he is unable to do so), the court may dismiss those defendants based on the plaintiff's failure to diligently pursue this case.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$318.15** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the

transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Fox Lake Correctional Institution.

The court **ORDERS** that the parties must not begin discovery (except to identify the Doe defendants at the Milwaukee County Jail and the House of Correction) until after the court issues a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 8th day of July, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**