# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**DOMINIC WILLIAMS,**

        **Plaintiff,**

  **v.**                                 **Case No. 24-CV-505**

**LAURA SUKOWATY, *et al.*,**

        **Defendants.**

---

## DECISION AND ORDER ON COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS

---

Plaintiff Dominic Williams, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Williams sues the defendants for allegedly failing to treat his serious skin condition violating his constitutional rights. The defendants who are employees of Milwaukee County, Diana Lynn Simmons, Lillian Oduwole, Susie Lietz, Nicole L. Heding, Mohita Gone and Heidi Madina (County Defendants) moved for summary judgment on the grounds that Williams failed to exhaust his administrative remedies as to the claims against them. (ECF No. 95.)

## PRELIMINARY MATTERS

At the outset, the court notes that Williams filed his response to the County Defendants' motion for summary judgment on exhaustion grounds several days after the June 18, 2026, deadline. Williams, in his declaration filed in support of his

response, states that he "attempted to adhere to the stated deadline of 6/18/2026" but because of "library access" issues, he was unable to submit his response by the deadline. (ECF No. 122 at 1-2.) Williams should have moved for an extension of time prior to his late filing. However, because he did submit a response, and the County Defendants submitted a meaningful reply, the court will accept Williams's late response.

The County Defendants also argue that Williams failed to follow Federal Rule Civil Procedure 56 and Civil Local Rule 56 when responding to their motion for summary judgment, failing to substantively dispute their proposed findings of fact. (ECF No. 123 at 2-5.) District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in a light most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). While Williams's proposed findings of fact do not formally conform with the rules, his response contains sufficient facts, allowing the court to rule on the defendants' summary judgment motion. As such, the court will consider the information contained in Williams's submissions where appropriate in deciding defendants' motion.

## FACTS

Williams was detained at the Milwaukee County Community Reintegration Center (CRC) from June 1, 2020 through September 27, 2020. (ECF No. 97, ¶ 7.) From September 27, 2020 through November 22, 2021, Williams was incarcerated at both the CRC and the Milwaukee County Jail (the exact dates of incarceration at

2

the Jail are unclear from the record). (ECF No. 1 at 2-3.) Defendant Gone was a nurse in the CRC's Health Services Unit (HSU). (ECF No. 97, ¶ 2.) Defendants Simmons, Oduwole, Lietz, Heding, and Madina were nurses in the Jail's HSU. (*Id.*, ¶ 3.) Williams alleges that while at the CRC and the Jail he suffered from a painful skin condition, but the County defendants would not treat it or send him to a dermatologist for better care. (ECF No. 1 at 3.)

While at the CRC, the County Defendants state that Williams filed only a single grievance related to a commissary issue. (ECF No. 97, ¶¶ 13-14.) There is no record of him filing any additional grievances, including any related to the treatment of his skin condition. (*Id.*, ¶ 16.)

While at the Jail, Williams submitted 16 grievances, but only one of the grievances related to his skin condition. (ECF No. 97, ¶¶ 32-33.) Williams did not appeal the response to that grievance. (*Id.*, ¶ 34.)

Williams does not dispute that he did not file formal grievances for his skin condition at either the CRC or the Jail. (ECF No. 121 at 14-16.) However, he states that he made informal verbal and written complaints (*e.g.* requests to the HSU) regarding his skin condition. (*Id.* at 15.) As a result of these informal complaints, Williams states that HSU staff promised a dermatology consult or referral, but that appointment was never made. (*Id.* at 18.) He also asserts that the formal grievance procedure "was invalidated and circumvented by the Corona Virus protocols put [in] place to ensure the safety of the prison population, medical staff and administrative body. Thus, hindering the normal process and procedural guideline set out for

3

grievance." (*Id.* at 15.) However, he does not provide details on how the variances in the processes prohibited him from using the formal grievance systems at the CRC and the Jail.

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a

4

genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

*Applicable Law and Procedure on Exhaustion*

The Prison Litigation Reform Act states in part that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court, and it produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency, because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

*The CRC's Grievance Procedures*

A prisoner at the CRC may file a grievance using the Aramark kiosk. (ECF No. 98-1 at 2.) If the kiosk is unavailable, a prisoner needs to ask a dorm officer for a paper form. (*Id.*) Paper forms are submitted by placing them in the designated lock box. (*Id.*) The assigned supervisor reviews a grievance within ten (10) working days of receipt of the grievance. (*Id.*) Once a decision is rendered, a prisoner must appeal the decision within three (3) days of receiving the decision. (*Id.*) Appeals are sent to the shift captain. (*Id.*) Once the prisoner appeals, he has completed the grievance process. (ECF No. 97, ¶¶ 11-12.)

*The Jail's Grievance Procedure*

The court notes that the County Defendants submitted the version of the Jail Handbook from 2018,(ECF No. 99-1 at 2.) The County Defendants also submitted the declaration of non-defendant Lieutenant John Dingman, who describes the process in place during the relevant time period in 2020. (ECF No. 99.) Dingman's process is different from the Handbook's process.

Dingman notes that the process evolved a few times during Williams's incarceration at the Jail, but "the grievance process consistently required that: (1) the occupant use the Kiosk to submit any grievance and appeals; (2) the Jail and Wellpath staff respond to the grievances and enter decisions in response to appeals through the kiosk; and (3) the two-level appeal." (*Id.*, ¶ 9.) Once a prisoner submits a grievance, it is assigned a request number and reviewed by the request manager. (*Id.*, ¶¶ 11-12.) The request manager then sends it to the appropriate staff member

6

for a response. (*Id.*, ¶ 14.) Once the staff member makes a response, it becomes available to the prisoner who can access the response via the kiosk. (*Id.*, ¶ 16.) If the prisoner is dissatisfied with the response, he could appeal the decision via the kiosk. (*Id.*, ¶ 17.) The appeal is then sent to the appropriate supervisor for review. (*Id.*, ¶ 18.) Once a decision on the appeal is rendered, the prisoner can review it on the kiosk. (*Id.*, ¶ 20.) If the prisoner is still dissatisfied, he may appeal it a second time using the kiosk. (*Id.*, ¶ 21.) Once the prisoner appeals a second time, he has completed the grievance process. (*Id.*, ¶ 22.)

*Application to this Case*

The defendants argue that Williams did not exhaust his administrative remedies against the County Defendants because he never used the formal grievance process at the CRC, and while he filed one relevant grievance at the Jail, he did not appeal it. The Seventh Circuit Court of Appeals "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the prison's grievance process prior to filing a case in federal court." *Id.* "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)

A prisoner can overcome his failure to exhaust his administrative remedies only where he can demonstrate that the grievance process was unavailable to him. *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018). A prisoner can show that a grievance process was unavailable when "(1) prison officials are 'consistently

7

unwilling to provide any relief to aggrieved inmates'; (2) the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use;' or (3) prison administrators take affirmative action to thwart use of the grievance process," but these are "only examples, not a closed list." *Id.* (quoting *Ross v. Blake*, 578 U.S. 632, 644-45 (2016)).

Williams argues that the exhaustion process at both the CRC and the Jail were unavailable to him because of how the institutions handled COVID-19. However, he does not explain or provide any details on how this impeded his ability to use the grievance processes. He does not explain why he could not use the kiosk system or why he could not appeal his grievances. It is clear that he was able to use the kiosk system to file grievances.[1] "Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). "It is therefore incumbent on the party opposing a summary judgment motion to 'inform the district court of the reasons why summary judgment should not be entered'" *Reed v. Brex, Inc.*, 8 F. 4th. 569, 578 (7th Cir. 2021) (quoting *Riely v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018)).

Williams also argues that he constructively exhausted his administrative

[1] As noted above, the process contained in the Jail's handbook is different than the process described by Dingman. Williams did not argue that he was unaware of either process or was confused by which process controlled, so the discrepancy is irrelevant. However, it is problematic that the Jail's stated process and the written process in the handbook are different, and this could cause exhaustion issues in the future.

8

remedies because he had informal communications with relevant staff through requests to the HSU and verbal conversations. These informal communications resulted in a promised solution—an appointment with a dermatologist—but that solution never materialized. By the time he realized he would not be seeing a dermatologist as promised, he states it was too late to file grievances, so the process was rendered unavailable. Attempts to informally resolve an issue either verbally or though requests do not satisfy the exhaustion requirement or act as a substitution for the exhaustion requirement. *Dionne v. Majewski*, Case No. 15-C-190, 2016 WL 1050283 at \*2 (E.D. Wis. March 16, 2016). "[T]he exhaustion requirement is intended to alert authorities to a problem of potentially constitutional significance, whereas health requests are just that: requests for aid. Simply mentioning a problem to a nurse does not accomplish the goal of alerting higher authorities to the nature of the grievance." *Id.* (citations omitted). Similarly, "making informal complaints to [institution staff]" does not satisfy the exhaustion requirement. *Id.* (quoting *Macias v. Zenk*, 495 F.3d 37, 44 (2nd Cir. 2007)). Once Williams realized that his requests were not being honored, to satisfy the exhaustion requirement, he needed to file a formal grievance using the grievance procedure. As for Williams's argument that he believed it was too late to file a formal grievance, "[n]o one can *know* whether administrative requests will be futile; the only way to find out is to try." *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 536-37 (7th Cir. 1999) (emphasis in original). While Williams notes that he transferred out of the County system into the Wisconsin Department of

9

Corrections system, he offers no evidence that he attempted to file or pursue a formal grievance for his lack of care in the County system but was prevented from doing so as a result of his transfer.

As such, Williams fails to demonstrate that he exhausted his administrative remedies or that the exhaustion process was rendered unavailable. Summary judgment is granted in favor of the County Defendants. .

## CONCLUSION

For the reasons stated above, the County Defendants' motion for summary judgment is granted. They are dismissed from the case. The Eighth Amendment deliberate indifference to medical needs claims against the State Defendants, Lisa Albrecht, Candace Whitman, Kay L. Walsh, and Robert Weinman remain. The court will issue an amended scheduling order at a later date.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for partial summary judgment on exhaustion grounds (ECF No. 95) is **GRANTED**.

**IT IS FURTHER ORDERED** that Diana Lynn Simmons, Lillian Oduwole, Susie Lietz, Nicole L. Heding, Mohita Gone and Heidi Madina are **DISMISSED**.

10

Dated at Milwaukee, Wisconsin this 6th day of August, 2026.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge

11